**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | |
| **ROYAL CAR RENTAL INC** | **CASE NO. 09-02276 BKT** |
| | **CHAPTER 11** |
| **Debtor(s)** | **ADVERSARY NO. 09-00220 BKT** |
| **ROYAL CAR RENTAL INC.** | |
| **Plaintiff** | |
| **WESTERNBANK PUERTO RICO** | FILED & ENTERED ON 04/23/2010 |
| **Defendant(s)** | |

<u>**ORDER**</u>

Before the court is defendant Westernbank's motion for summary judgment, the Debtor/plaintiff's opposition, and Westernbanks' reply thereto. For the reasons set forth below, Westernbank's motion for summary judgment is granted. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).

**BACKGROUND**

Debtor Royal Car Rental is a corporation organized and existing under the laws of Puerto Rico devoted to leasing motor vehicles for profit. Since its inception, Debtor's president has been Mr. Frank Lopez Carballo. On or about May 10, 2007, Debtor and Westernbank entered into a Line of Credit Agreement. Through the line of credit, Westernbank provided to Debtor certain revolving credit facilities up to the amount of $1,000,000.00 to obtain new and/or used motor vehicles. Debtor was obligated to pay accrued interest and principal on a monthly basis and was obligated to deposit in an escrow account on a monthly basis. The line of credit had an expiration date of May 10, 2008.

To secure Debtor's obligations under the line of credit, Westernbank obtained several promissory notes, a chattel lien agreement and joint and several liability guarantees subscribed by Bumpers Royal, Inc. - Debtor's related entity, Frank Lopez Carballo and his wife Naidabel Soto, Debtor's representatives.  In addition, Westernbank requested that a lien be constituted over Debtor's vehicles.  However, it is evident from the record that said liens were never registered in the Department of Public Works as required for perfection. Thus, Westernbank failed to perfect a valid security interest over Debtor's motor vehicles.

In or around December 2007, the line of credit had an outstanding balance of $800,000. Debtor requested an advance of $850,000, which was denied by Westernbank as it would exceed the one million dollar limit by $650,000. There is no further evidence in the record that any other denial was made to Debtor, nor that the line of credit limit had been increased as per an oral agreement between the parties. It is uncontested that there is no written agreement signed by an authorized officer of Westernbank approving the requested extension of the line of credit.

Failure to tender payments under the loan constituted an event of default under Section H(i) of the line of credit agreement. This default would entitle Westernbank to accelerate the entirety of the debt.  Debtor incurred in substantial pre-petition defaults, including payment defaults, under the line of credit. In spite of the defaults, Debtor and Westernbank agreed to extend in writing the existing line of credit on five occasions: June 25, 2008, August 27, 2008, October 29, 2008, December 24, 2008 and February 26, 2009.  This last extension of the line of credit expired on March 31, 2009. Westernbank agreed to make those disbursements against promissory notes submitted by Debtor and

Bumpers Royal. On March 26, 2009, Debtor filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As of the date of the filing of these summary judgment motions, Debtor owes the aggregate amount of $914,682.70, which consists of $873,958.65 in principal, and $40,724.05 in interest and costs.

On October 20, 2009, Debtor filed the present adversary alleging that Westernbank breached it's obligations under the line of credit agreement by imposing illegal conditions, controlling Debtor's business and discontinuing disbursements before the loan was due. Specifically Debtor alleges that Article 3.7 of the line of credit agreement contains language which required, in summary, that "every other banking business be made with Westernbank." *See*, Complaint at p. 7. The line of credit agreement contained the following clause:

> **Transfer of Banking Business:** It will be an indispensable condition for the granting of the loans that DEBTOR transfers all of their savings and checking accounts, certificates of deposit, and personal and business loans, to be deposited, opened and/or transferred to the BANK.

This stringent requirement allegedly resulted in Debtor's lack of liquidity and caused substantial damage to Debtor and prevented efficient administration. Debtor avers that the language and impositions of this article in the line of credit agreement is prohibited under the Bank Holding Company Act 12 U.S.C. § 1971, et. seq.(BHCA).

**SUMMARY JUDGMENT STANDARD**

Both Westernbank and Debtor claim an entitlement to summary judgment. Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See,* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. *See also,* Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). In viewing the facts, the Court must draw all reasonable inferences from them, in the manner most favorable to the nonmovant. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994); Piccicuto v. Dwyer, 39 F.3d 37, 40 (1st Cir. 1994). "The summary judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10 Wright and Miller, Federal Practice and Procedure § 2712 (3d ed. 1998).  "Rule 56 provides the means by which a party may pierce the allegations in the pleading and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." *Id*. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried and it is improper if the existence of a material fact is uncertain. *Id*. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). A fact is considered material if it might affect the outcome of a case under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).  Therefore, a factual issue is material only if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment. U.S. Fire Ins. Co. v. Productions Padosa, Inc., 835 F.2d 950, 953 (1st Cir. 1987).

**ANALYSIS**

**I       Liability for Breach of the Line of Credit Agreement**

A contract is in existence between two parties when the following conditions are met (1) the consent

of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause for the obligation, which may be established. *See*, Article 1313 of the Civil Code, 31 L.P.R.A. § 3391.  Once the essential conditions required for their validity exist, contracts shall be binding between the parties. *See*, Article 1230, 31 L.P.R.A. § 3451. Article 1044 of the Civil Code of Puerto Rico, 31 L.P.R.A. §2994 states that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."  Article 1207 of the Civil Code, 31 L.P.R.A. §3372 provides that:

> "[T]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided that they are not in contravention of law, morals, or public order."

The contractual provisions of the line of credit agreement defined and controlled the legal relationship between Debtor and Westernbank.  It is undisputed that on or about May 10, 2007, a line of credit agreement was entered into between Debtor and Westernbank. It is further undisputed that during the life of the credit line $921,670.62 was disbursed to the Debtor and that during the term of the line of credit Debtor fell behind and defaulted on the payment terms of the line of credit.

Debtor's allegation that Westernbank breached the contract by refusing to allow a disbursement that would exceed the limit of the line of credit is not seen by this Court as a breach on the part of the bank.  It is merely a refusal by Westernbank to have Debtor go beyond the restrictions of the established agreement. According to Debtor's own testimony at his deposition, this was the only advance that Westernbank refused to make during the life of the agreement.  As to the allegation of improper termination of the agreement, Westernbank is correct in asserting that after May 10, 2008, the Debtor entered into five additional agreements to extend the line of credit.  Pursuant to those agreements, Debtor and its guarantors ratified their obligations to Westernbank, establishing specific

dates for repayment, and therefore waived any claim that Debtor had against Westernbank for the alleged improper termination of the line of credit. *See*, <u>Marina Industrial, Inc. v. Brown Boveri</u>, 114 D.P.R. 64 (1983); <u>Carrasquillo et. al. v. Bertran et. al</u>., 26 D.P.R. 582 (1918) (the ratification or confirmation of a contract has the effect of validating such contract.) In its review of the complete record this Court finds that Debtor has presented no admissible evidence that the line of credit agreement was breached by Westernbank.

## II.      Violation of the Bank Holding Company Act

The crucial section of this statute covering Westernbank's allegedly illegal conduct is Section 106(b) codified as 12 U.S.C.§ 1972 . The BHCA prohibits a bank from conditioning the provision of credit or any other service on a requirement that the customer obtain any additional service from the bank or from any subsidiary of the bank. Specifically, the BHCA provides in relevant part, "A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement (A) that the customer shall obtain some additional credit, property, or service from such bank **other than** a loan, discount, deposit, or trust service; [or] (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company; [or] ... (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company, of such bank, or any subsidiary of such bank holding company, **other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit**." 12 U.S.C. § 1972; <u>Ticket Center, Inc. v. Banco Popular de Puerto Rico</u>, 613 F.Supp.2d 162(D.P.R. 2008) (emphasis ours).

The central purpose of this section, as interpreted by the Federal Reserve Board, is to prevent banks from using their market power in banking products, including credit, to gain an unfair competitive advantage in other products. *See*, "Fed Proposes Official Interpretation on Anti-Tying Exceptions" 69 Federal Register 52024, August 29, 2003. A judicially recognized exception to the anti-tying provisions of the BHCA holds that while the anti-tying provisions are intended to prevent anti-competitive practices, they are not intended to interfere with appropriate traditional banking practices or prevent legitimate attempts by a bank to protect its investments. McCoy v. Franklin Sav Ass'n, 636 F.2d 172 (7th Cir. 1980); Sterling Coal Co., Inc. v United American Bank in Knoxville, 470 F.Supp. 964 (E.D. Tenn. 1979).  This exception specifically permits a bank to condition the availability or price of a product or service on a requirement that the customer also obtain a "loan, discount, deposit, or trust service" from the bank or an affiliate of the bank. *See*, 11 U.S.C. § 1972(1)(A); B.C. Recreational Industries v. First Nat. Bank of Boston, 639 F.2d 828, 832 (1st Cir. 1981). All forms of deposit accounts fall within the definition of the second banking product offered by the bank.  The Court in B.C. Recreational Industries v. First Nat. Bank of Boston, held that tying prohibitions do not interfere with the conduct of appropriate traditional banking practices, and cited Sterling Coal Co. v. United Am. Bank, 470 F.Supp. 964, 965 (E.D. Tenn. 1979), where the Court "ruled specifically that conditioning the grant and extension of credit on the requirement that the bank supervise and control the plaintiff's checking account and other corporate affairs, including veto power over purchases and payment of dividends, was not prohibited by the Act." *Id*.

Factual underpinnings are missing from the complaint and from the record of this case concerning

conditions or requirements which would enable this court to reach the conclusion that the bank was departing from traditional banking practices in its dealings with Debtor. It is this Court's finding that the BHCA was not intended to interfere with conduct stemming from such traditional banking practices as were exercised by Westernbank.

**CONCLUSION**

The motion for summary judgment filed by defendant, Westernbank, on December 31, 2009, [Dkt. No. 16] is GRANTED. The Court rules that Westernbank is not liable to Debtor neither for breach of contract, nor for violations under the Bank Holding Company Act. The Clerk shall enter judgment dismissing the complaint.

**SO ORDERED.**

**San Juan, Puerto Rico, this 23 day of April, 2010.**

**Brian K. Tester**
**U.S. Bankruptcy Judge**